UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-20293-CV-KING
(06-20445-CR-KING)

RONALD ARRESKJOLD,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## ORDER DENYING MOTION TO VACATE SENTENCE

THIS CAUSE comes before the Court upon Magistrate Judge Patrick A. White's Report and Recommendation (DE #16) on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (DE #1),[1] brought pursuant to 28 U.S.C. § 2255. Petitioner has filed Objections (DE #17). After careful consideration and a *de novo* review of the record, the Court ultimately agrees with Judge White that the Motion should be denied. However, the Court reaches that result through different reasoning, and writes separately to clarify the decision.

**I.**     **Introduction**

Petitioner pled guilty in Case No. 06-CR-20445 to conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960. As part of his plea agreement, he waived his right to appeal, and accordingly did not file a direct appeal. Several months after he was sentenced, the Supreme Court decided *United States v. Santos*, 128 S. Ct. 2020 (2008), which narrowed the definition of the word

---

[1] DE #58 in 06-CR-20445.

"proceeds" in the money laundering statute by holding that, at least for some predicate offenses, "proceeds" meant "net profits" and not "gross receipts." Petitioner thereafter filed the instant Motion to Vacate pursuant to 18 U.S.C. § 2255, claiming that *Santos* requires that his sentence be vacated.

Petitioner's motion is structured as asserting two claims: one for ineffective assistance of counsel, and one that he is "actually innocent" of the money laundering charge to which he pled guilty. However, in liberally construing the *pro se* motion, the Court notes that Petitioner has actually presented the following two claims: 1) He received ineffective assistance of counsel, and 2) his guilty plea was involuntary and unintelligent. Before addressing these two claims, however, it is necessary to briefly discuss two preliminary issues.

## II.    Preliminary Issues

### A.    Retroactivity

As an initial matter, retroactivity is not an issue in this case. Judge White notes in his Report that, because *Santos* was decided after Petitioner's judgment became final, and it appears that *Santos* does not apply retroactively, Petitioner is procedurally barred from raising it. Assuming for the moment that *Santos* does not apply retroactively, Petitioner would still not be procedurally barred because the instant case is not a "*Santos* claim"; it is a claim for ineffective assistance of counsel (based on the Sixth Amendment guarantee of counsel) and an involuntary guilty plea (based on the Fifth Amendment privilege against self-incrimination and the general principle that waivers of constitutional rights must be knowing and voluntary). These principles were announced long before Petitioner's criminal judgment became final, and accordingly the issue of retroactivity need not be addressed.

Indeed, the Supreme Court conclusively decided this issue in *Bousley v. United States*, 523 U.S. 614 (1998). In *Bousley*, the petitioner pled guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1). *Id.* at 616. Five years later, the Court held in *Bailey v. United States*, 516 U.S. 137 (1995), that § 924(c)(1)'s "use" prong required the Government to show "active employment of the firearm." *Id.* The petitioner then filed a § 2255 petition, arguing that his guilty plea was involuntary and unintelligent. *Id.* The Government made the argument that the petitioner could not seek relief because *Bailey* was not retroactive and the Court specifically rejected it, noting that it was unnecessary to conduct a retroactivity analysis because "[t]he only constitutional claim made [in *Bousley*] is that petitioner's guilty plea was not knowing and intelligent. There is surely nothing new about this principle." *Id.* at 620.

Moreover, even if this were a "*Santos* claim," it would still not be procedurally barred when analyzed under the retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Under *Teague*, "[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rul[e] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding.'" *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (quoting *Teague*, 489 U.S. at 311; second brackets in original). This case does not fall within the second prong because *Santos* did not announce a watershed rule of criminal procedure, but it would fall within the first prong, because *Santos* announced a new substantive rule by modifying the elements of a criminal offense. *See Schriro v. Summerlin*, 542 U.S. 348, 354 (2004) ("New substantive rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms."); *Gonzalez v. Crosby*, 545 U.S. 524, 537 n. 9 (2005) ("A change in the interpretation of a substantive statute may have consequences for cases that have already reached final judgment, particularly in the criminal

context."); *United States v. Arevalo*, 2010 U.S. App. LEXIS 5579, *1-2 (11th Cir. Mar. 17, 2010) ("It is also clear that the claim Arevalo makes in his audita querela motion -- that his conviction should be collaterally overturned because the Supreme Court's recent decision in *United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008) applies retroactively -- is cognizable under § 2255.").[2]    Thus, under *Teague*, a pure "*Santos* claim" should apply retroactively.[3]

### B.    Actual Innocence

The term "actual innocence" has been used loosely by the parties in this case, and thus it would be helpful to clarify the scope of that term.   Although the Supreme Court has assumed, without deciding, that a freestanding actual innocence claim may be available to a capital defendant, such a claim is not available in a non-capital case.  *Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("But this body of our habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.").   Thus, "actual innocence" is not an affirmative claim for relief upon which a habeas petition may be granted.   Rather, it is an *exception* that allows a petitioner to get around procedural hurdles such as 1) the one-year statute of limitation, 2) the prohibition against second or successive petitions, and 3) the rule of procedural default.  The first and second hurdles are

---

[2] It may also be possible for Petitioner to argue in a *Santos* claim that retroactivity was inapplicable because *Santos* did not announce a "new" rule, but merely clarified what the law always meant.  In this vein, he could argue that he was convicted without the Government having proven every element of the offense beyond a reasonable doubt, which would violate the Due Process Clause. *See Fiore v. White,* 531 U.S. 225, 229 (2001) ("Rather, the question is simply whether Pennsylvania can, consistently with the Federal Due Process Clause, convict Fiore for conduct that its criminal statute, as properly interpreted, does not prohibit. This Court's precedents make clear that Fiore's conviction and continued incarceration on this charge violate due process. We have held that the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt.").

[3] Of course, this would only be the case for Petitioner if *Santos* applied to Petitioner's case, which, as the Court explains below, it does not

inapplicable here because Petitioner filed the instant Motion within one year of his criminal judgment becoming final,[4] and this is his first petition. However, it is relevant to the third hurdle, procedural default.

Procedural default is "the general rule that claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003). There are exceptions to this rule (including actual innocence), which will be discussed below. Here, Petitioner did not raise any claim on direct appeal because no appeal was filed. Therefore, procedural default must be addressed with respect to each claim raised in this Motion. Having so recognized, the Court will now turn to Petitioner's claims.

## II.     Ineffective Assistance of Counsel

### A.     Procedural Default

The Supreme Court has held that a claim for ineffective assistance of counsel is not subject to the rule of procedural default. *Massaro*, 538 U.S. at 509 ("We do hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."). Therefore, the fact that Petitioner did not raise this claim on direct appeal does not bar consideration of the claim in the instant Motion.

### B.     The Merits

Petitioner claims that he received ineffective assistance of counsel because his lawyer failed to notify him that the Supreme Court had granted certiorari in the *Santos* case, and that, had he known of this development, he would not have pled guilty and would have insisted on going to trial. Similarly, Petitioner claims that his counsel should have filed a challenge to the

---

[4] As Judge White correctly noted, the conviction became final on February 1, 2008, and Petitioner filed this Motion on January 27, 2009, less than one year later. Therefore, no discussion of whether *Santos* reset the limitations clock by announcing a new right is necessary.

statute, arguing for a different interpretation of the word "proceeds," which was the subject of the eventual *Santos* decision.[5]

However, these purported errors do not amount to ineffective assistance of counsel. Under the two-part test of *Strickland v. Washington*, Petitioner must show 1) that his counsel exhibited constitutionally deficient performance, and 2) that he was prejudiced as a result. 466 U.S. 668, 687 (1984). The first prong is easily disposed of because, in the Eleventh Circuit, it is not ineffective assistance of counsel to fail to anticipate a change in the law. *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that 'reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'" (quoting *Elledge v. Dugger*, 823 F.2d 1439, 1443 (11th Cir. 1987)); *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (Carnes, J., concurring in the denial of a petition for rehearing en banc) ("In this circuit, we have a wall of binding precedent which shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel."). Thus, counsel's failure to anticipate the Supreme Court's decision in *Santos* could not have been ineffective assistance.

The fact that, at the time of Petitioner's guilty plea, the Supreme Court had already granted certiorari in *Santos* does not alter this result. At the time of Petitioner's guilty plea, only the Seventh Circuit had limited the definition of proceeds to "net profits," and the two published cases both involved gambling proceeds. *See Santos v. United States,* 461 f.3d 886 (7th Cir. 2006); *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002). Moreover, as the Seventh Circuit acknowledged in its *Santos* decision, several other circuits had rejected this view. *See Santos*, 461 F.3d at 891 ("To start, all the other circuits that have confronted the statutory debate

---

[5] Petitioner also claims that his counsel should have raised a constitutional challenge to the money laundering statute. This claim is meritless because *Santos* said nothing about the constitutionality of the statute.

over whether "proceeds" in § 1956(a)(1) means gross or net income have rejected *Scialabba*'s approach."). *See also United States v. Grasso*, 381 F.3d 160, 167 (3d Cir. 2004); *United States v. Iacaboni*, 363 F.3d 1, 4 (1st Cir. 2004); *United States v. Huber*, 404 F.3d 1047, 1058 (8th Cir. 2005). In fact, the Eleventh Circuit, while not directly addressing the issue, had noted that "[t]he term 'proceeds' simply represents what is produced by or derived from something (as a sale, investment, levy, business) by way of *total revenue*; the total amount brought in." *United States v. Silvestri*, 409 F.3d 1311, 1333 (11th Cir. 2005) (emphasis added; quotations and citations omitted). Accordingly, the Supreme Court's grant of certiorari did nothing to change the fact that the law was fairly well established that proceeds meant "gross receipts." Hence, Petitioner's counsel's failure to raise any *Santos*-type issues did not amount to constitutionally deficient performance.

Moreover, Petitioner cannot satisfy the second *Strickland* prong—prejudice. In the context of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Petitioner cannot demonstrate this because the *Santos* decision, as subsequently interpreted by the Eleventh Circuit and other courts, does not apply to Petitioner's case.[6] In *Santos*, the Supreme Court addressed the meaning of the federal money laundering statute, specifically, 18 U.S.C. § 1956(a)(1)(A)(i). This statute makes it a crime for someone to, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[] or attempt[] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—with the intent to promote the carrying on of specified unlawful activity." The unlawful activity in *Santos* was an illegal gambling operation. *Santos*,

---

[6] This is also a reason that Petitioner cannot satisfy the performance prong.

128 S.Ct. at 2023. The specific issue that the *Santos* Court confronted was the meaning of the term "proceeds" in the statute. Noting that the term was susceptible to either definition, a four-justice plurality applied the Rule of Lenity and held that the word proceeds meant net profits, and not gross receipts. *Id.* at 2025. Moreover, three of the Justices in the plurality made clear that they thought the word proceeds must mean the same thing throughout the entire statute, no matter what the predicate offense was. *Id.* at 2029-31.

However, *Santos* was a fractured decision. Justice Stevens, concurring in the judgment, reasoned that the word could mean different things in different contexts, and concluded that, at least when the predicate offense is gambling, proceeds meant net profits. *Id.* at 2033-34. Meanwhile, the principal dissent, joined by four Justices, disagreed with the idea that the word proceeds could take on different meanings depending on the context. *Id.* at 2035-36. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest ground.'" *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976)). Here, that narrow holding is difficult to discern. Although Justice Stevens's concurring opinion, holding that proceeds means net profits if the predicate offense is gambling, would appear to be narrowest, there is no agreement on whether that interpretation carries over for other predicate offenses. Indeed, an examination of the plurality and dissenting opinions shows that seven Justices appear to agree that the word cannot mean different things in different contexts. Thus, the only precedential value that can be taken from *Santos* is its specific result—that, when the predicate offense is gambling, proceeds means net profits. Given the fractured nature of the decision, that holding cannot be extended to other predicate offenses without clearer guidance from the

Supreme Court. In fact, nearly every court, including the Eleventh Circuit, to have confronted the issue has reached the same conclusion. *See United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009) ("The narrow holding in Santos, at most, was that the gross receipts of an unlicensed gambling operation were not 'proceeds' under section 1956, but there is no evidence that the funds Demarest laundered were gross receipts of an illegal gambling operation. The evidence instead established that the laundered funds were the proceeds of an enterprise engaged in illegal drug trafficking."); *United States v. Howard*, 309 Fed. App'x 760, 771, (4th Cir. 2009) ("Because Santos does not establish a binding precedent that the term 'proceeds' means 'profits,' except regarding an illegal gambling charge, we are bound by this Court's precedent establishing that 'proceeds' means 'receipts.'); *United States v. Fleming*, 287 Fed. Appx. 150, 155 (3d Cir. 2008) ("Therefore, even if the government did not show that the money involved in Fleming's money laundering conviction was profits from the drug sales, his conviction on this count must stand because, as we have stated, the term 'proceeds' includes gross revenues for drug sales."); *United States v. Brown*, 553 F.3d 768, 783 (5th Cir. 2008) ("The precedential value of *Santos* is unclear outside of the narrow factual setting of that case; and the decision raises as many issues as it resolves for the lower courts.").

In the instant case, Petitioner pled guilty to laundering the proceeds of a drug trafficking operation. Because the predicate offense was not gambling, *Santos* says nothing about the meaning of the word "proceeds" in Petitioner's case. As such, Petitioner cannot establish a reasonable probability that he would have withdrawn his guilty plea and insisted on a trial, because *Santos* did not change the law—it was exactly the same before and after Petitioner's guilty plea. Accordingly, Petitioner cannot satisfy *Strickland*'s prejudice prong, and therefore his claim for ineffective assistance of counsel must be rejected.

### III.    Involuntary and Unintelligent Guilty Plea

#### A.    Procedural Default

Ordinarily, because Petitioner did not raise the issue of the voluntariness of his guilty plea on direct appeal, he would not be permitted to raise the issue on collateral review. *Bousley v. United States*, 523 U.S. 614, 621 (1998) ("And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). However, there are two exceptions to this rule: "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either [1] 'cause' and actual 'prejudice,' or [2] that he is 'actually innocent.'" *Id.* at 622 (citations omitted). The Court will address each exception in turn.

#### 1.    Cause and Prejudice

To demonstrate "cause," Petitioner must show that "some objective factor external to the defense" impeded his ability to raise the issue on direct review. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Although the Supreme Court has held that ineffective assistance of counsel can qualify as sufficient cause, see *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986), as discussed above, Petitioner's counsel was not ineffective. Equally unavailing are arguments asserting that the legal basis for the claim was unavailable at the time of his plea, or that such a claim would have been futile. *Bousley* makes clear that these arguments are not sufficient to demonstrate cause. *Bousley*, 523 U.S. at 622-23.

Petitioner's only argument that may have merit is the fact that, as part of his plea agreement and in exchange for the Government's dismissal of several counts of the indictment, Petitioner waived his right to appeal. Accordingly, Petitioner did not file a direct appeal. In contrast, the defendant in *Bousley* did file a direct appeal, but did not assert the claim that he was

attempting to bring on collateral review. If Petitioner's waiver of his right to appeal was premised on misinformation about the elements of the crime with which he was charged, that waiver may have been involuntary and unintelligent, which could provide sufficient "cause" to satisfy the first prong of the "cause and prejudice" requirement.

However, even assuming Petitioner has demonstrated sufficient cause, he cannot establish prejudice because, as discussed above, the *Santos* decision does not apply to his case. That is, even if he were permitted to raise the claim, the result would be the same because *Santos* did not change the definition of proceeds when the predicate offense is not gambling. Accordingly, Petitioner has not met the "cause and prejudice" standard.

### 2. Actual Innocence

To establish actually innocence, Petitioner must "show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496). Of course, this standard was designed to be applied after a trial and conviction. Here, there was no trial because Petitioner pled guilty. Accordingly, the Court has no evidence to evaluate except for the Government's factual proffer during the plea colloquy, which says nothing on whether Petitioner laundered net profits or merely gross receipts. The Supreme Court confronted this very situation in *Bousley*, instructing that, if a petitioner makes a colorable showing that a post-plea interpretation of the law by the Supreme Court renders his plea involuntary, the district court should hold a hearing at which the petitioner

could attempt to show that he is actually innocent of the charges. *Bousley*, 523 U.S. at 623.[7] In the instant case, however, Petitioner is not entitled to a hearing on this issue because he cannot make the threshold showing that his plea was involuntary. That is, because *Santos* did not change the law as it applied to Petitioner, the record conclusively demonstrates that he had a full and complete understanding of the offense to which he pled guilty. Thus, Petitioner cannot make the requisite showing to satisfy the actual innocence exception, and therefore, because of his procedural default, he is not entitled to a consideration of the merits of his claim.

**B.      The Merits**

Of course, as noted above, a consideration of the merits of this claim is somewhat intertwined with the actual innocence issue. Therefore, to be thorough, the Court finds that, assuming Petitioner is entitled to have his involuntary plea claim heard on the merits, it still fails.

A plea of guilty, like all waivers of constitutional rights, must be "voluntary" and "intelligent." *Brady v. United States*, 397 U.S. 742, 748 (1970). A plea does not qualify as intelligent unless the criminal defendant receives "real notice of the true nature of the charge against him." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The Supreme Court has noted that, when a post-guilty-plea change in the interpretation of a criminal statute renders incorrect the information provided to the defendant about nature of the charge, such a plea is constitutionally invalid. *Bousley*, 523 U.S. at 618-19 ("In other words, petitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged. Were this contention proven, petitioner's plea would be, contrary to the view expressed by the Court of Appeals, constitutionally invalid.").

---

[7] Further, *Bousley* noted that the parties would not be limited to the evidence currently in the record, and also that Petitioner would be required to show that he is actually innocent of all the charges the Government declined to bring in exchange for Petitioner's guilty plea. *Bousley*, 523 U.S. at 624.

However, as discussed above, that is not the case here because *Santos* did not change the law. As it applies to Petitioner, the definition of "proceeds" is still the same as it was before Petitioner pled guilty. Therefore, Petitioner had a full and complete understanding of the nature of the charges against him, and his guilty plea was voluntary and intelligent. Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," Petitioner is not entitled to a hearing, and his motion to vacate must be denied. 28 U.S.C. § 2255(b).

**IV.    Conclusion**

Accordingly, after careful consideration and the Court being otherwise fully advised, it is

**ORDERED, ADJUDGED,** and **DECREED** that:

1.    Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (DE #1 in 09-CV-20293 & DE #58 in 06-CR-20445) is hereby **DENIED.**

2.    Judge White's Report and Recommendation (DE #16 in 09-CV-20293) is hereby **AFFIRMED** with respect its result, but for the reasoning stated in this Order.

3.    The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 14th day of April, 2010.

JAMES LAWRENCE KING
U.S. DISTRICT JUDGE

**Cc:**
**Magistrate Judge Patrick A. White**

**Counsel for USA**
Anne Ruth Schultz
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9117
Fax: 530-7941
Email: anne.schultz@usdoj.gov
TERMINATED: 02/17/2009
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Thomas Pinder
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132
202-514-8171
Fax: 202-616-2547
Email: Thomas.Pinder@usdoj.gov
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Counsel for Petitioner**
Ronald Aareskjold
Reg. No. 28448-050
LSCI - Butner
P.O. Box 999
Butner, NC 27509
PRO SE